1  Lincoln D. Bandlow, Esq. (CA #170449)
   Lincoln@BandlowLaw.com
2  **Law Offices of Lincoln Bandlow, PC**
   1801 Century Park East, Suite 2400
3  Los Angeles, CA  90067
   Phone: (310) 556-9680
4  Fax: (310) 861-5550

5  Attorney for Plaintiff
   Strike 3 Holdings, LLC
6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9                              OAKLAND DIVISION

10

11  STRIKE 3 HOLDINGS, LLC,                  Case Number: 3:24-cv-03251-AMO

12                  Plaintiff,                **FIRST AMENDED COMPLAINT FOR
                                              COPYRIGHT INFRINGEMENT -
13  vs.                                       DEMAND FOR JURY TRIAL**

14  JOHN DOE infringer using IP address       **[REDACTED VERSION]**
    24.4.188.12,
15
                    Defendant.
16

17

18         Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), brings this First Amended

19  Complaint against Defendant, John Doe infringer using IP address 24.4.188.12 a/k/a

20  **[REDACTED]** ("Defendant"), and alleges as follows:

21                                    **Introduction**

22         1.     This is a case about the ongoing and wholesale copyright infringement of

23  Plaintiff's motion pictures by Defendant.

24         2.     Plaintiff is the owner of award-winning, critically acclaimed adult motion

25  pictures.

26         3.     Strike 3's motion pictures are distributed through the *Blacked*, *Tushy*, *Vixen*,

27  *Tushy Raw*, *Blacked Raw*, *MILFY*, and *Slayed* adult websites and DVDs.  With millions of

28  unique visitors to its websites each month, the brands are famous for redefining adult content,

                                         1

creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

4. Defendant is, in a word, stealing these works on a grand scale. Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others. Defendant did not infringe just one or two of Strike 3's motion pictures. Rather, Defendant has been recorded infringing 27 movies over an extended period of time.

5. Although Defendant attempted to hide this theft by infringing Plaintiff's content anonymously, this court's order permitted Plaintiff to serve a subpoena on Defendant's Internet Service Provider ("ISP"), Comcast Cable Communications, LLC, to discover the identity of the subscriber assigned IP address 24.4.188.12, the IP address Defendant used to download and share Plaintiff's works.

6. Based on the response to that subpoena provided by the ISP and Plaintiff's investigation of the subscriber and publicly available resources, Plaintiff identified Defendant as the true infringer.

7. This is a civil action seeking damages under the United States Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

**Jurisdiction and Venue**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

9. This Court has personal jurisdiction over Defendant because Defendant used an Internet Protocol address ("IP address") traced to a physical address located within this District to commit copyright infringement. Therefore: (i) Defendant committed the tortious conduct alleged in this First Amended Complaint in this State; (ii) Defendant resides in this State and/or; (iii) Defendant has engaged in substantial – and not isolated – business activity in this State.

10. Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this District because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this

1  State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for
2  copyright cases) because Defendant or Defendant's agent resides or may be found in this
3  District.

**Parties**

5  11.  Plaintiff, Strike 3 is a Delaware limited liability company located at 2140 S.
6  Dupont Hwy, Camden, DE.

7  12.  Defendant, **[REDACTED]**, is an individual currently residing at **[REDACTED]**.

**Factual Background**

*Plaintiff's Award-Winning Copyrights*

10  13.  Strike 3's subscription-based websites proudly boast a paid subscriber base that
11  is one of the highest of any adult-content sites in the world.  Strike 3 also licenses its motion
12  pictures to popular broadcasters and Strike 3's motion pictures are the number one selling adult
13  DVDs in the United States.

14  14.  Strike 3's motion pictures and websites have won numerous awards, such as
15  "best cinematography," "best new studio," and "adult site of the year."

16  15.  Strike 3's motion pictures have had positive global impact, leading more adult
17  studios to invest in better content, higher pay for performers, and to treat each performer with
18  respect and like an artist.

19  16.  Unfortunately, like a large number of other makers of motion picture and
20  television works, Strike 3 is the victim of mass Internet piracy.  Often appearing among the
21  most infringed popular entertainment content on torrent websites, Strike 3's motion pictures are
22  among the most pirated content in the world.

*Defendant Used the BitTorrent File Distribution Network*

*to Infringe Plaintiff's Copyrights*

26  17.  BitTorrent is a system designed to quickly distribute large files over the Internet.
27  Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able
28  to connect to the computers of other BitTorrent users in order to simultaneously download and

3

1 upload pieces of the file from and to other users.

2     18.    BitTorrent's popularity stems from the ability of users to directly interact with
3 each other to distribute a large file without creating a heavy load on any individual source
4 computer and/or network. It enables Plaintiff's motion pictures, which are often filmed in state
5 of the art 4kHD, to be transferred quickly and efficiently.

6     19.    To share a movie within the BitTorrent network, a user first uses BitTorrent
7 software to create a .torrent file from the original digital media file. This process breaks the
8 original digital media file down into numerous pieces.

9     20.    The entire movie file being shared has a hash value (*i.e.*, the "File Hash"). A
10 hash value is an alpha-numeric value of a fixed length that uniquely identifies data.

11     21.    Hash values are not arbitrarily assigned to data merely for identification
12 purposes, but rather are the product of a cryptographic algorithm applied to the data itself. As
13 such, while two identical sets of data will produce the same cryptographic hash value, any
14 change to the underlying data – no matter how small – will change the cryptographic hash value
15 that correlates to it.

16     22.    To find and re-assemble the pieces of the digital media file, *i.e.*, to download the
17 file using BitTorrent, a user must obtain the .torrent file for the specific file that has been broken
18 down into pieces.

19     23.    Each .torrent file contains important metadata with respect to the pieces of the
20 file. When this data is put into the cryptographic algorithm, it results in a hash value called the
21 "Info Hash."

22     24.    The "Info Hash" is the data that the BitTorrent protocol uses to identify and
23 locate the other pieces of the desired file (in this case, the desired file is the respective file for
24 the infringing motion pictures that are the subject of this action) across the BitTorrent network.

25     25.    Using the Info Hash in the metadata of a .torrent file, a user may collect all the
26 pieces of the digital media file that correlates with the specific .torrent file.

27     26.    Once a user downloads all of the pieces of that digital media file from other
28 BitTorrent users, the digital media file is automatically reassembled into its original form, ready

4

for playing.

27. Plaintiff has developed, owns, and operates an infringement detection system, named "VXN Scan."

28. Using VXN Scan, Plaintiff discovered that Defendant used the BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures.

29. To explain, while Defendant was using the BitTorrent file distribution network, VXN Scan established direct TCP/IP connections with Defendant's IP address.

30. VXN Scan downloaded from Defendant one or more pieces of numerous digital media files.

31. Plaintiff identified these pieces as portions of infringing copies of Strike 3's motion pictures.

32. To explain, the VXN Scan system first searched for and obtained .torrent files claiming to be infringing copies of Plaintiff's works, and then downloaded complete copies of the digital media files that correlate to those .torrent files.

33. Plaintiff then compared the completed digital media files to Plaintiff's copyrighted works to determine whether they are infringing copies of one of Plaintiff's copyrighted works.

34. The digital media files have been verified to contain a digital copy of a motion picture that is identical (or, alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted Works.

35. VXN Scan then used the "Info Hash" value, contained within the metadata of the .torrent file correlated with a digital media file that was determined to be identical (or substantially similar) to a copyrighted work, to download a piece (or pieces) of the same digital media file from Defendant using the BitTorrent network.

36. At no point did VXN Scan upload content to any BitTorrent user. Indeed, it is incapable of doing so.

37. The VXN Scan captured transactions from Defendant sharing specific pieces of 27 digital media files that have been determined to be identical (or substantially similar) to a

5

copyrighted work(s) that Plaintiff owns.

38. VXN Scan recorded each transaction in a PCAP file.

39. VXN Scan recorded multiple transactions in this matter.

40. For each work infringed a single transaction is listed on Exhibit A.

41. For each transaction listed, Exhibit A sets forth the Universal Time Coordinated (UTC) time and date of each transaction, along with (1) the Info Hash value obtained from the metadata of the corresponding .torrent file that formed the basis of the VXN Scan's request for data, and (2) the File Hash value of the digital media file itself.

42. Exhibit A also sets forth relevant copyright information for each work at issue: the date of publication, the date of registration, and the work's copyright registration number. In a showing of good faith, Plaintiff has intentionally omitted the title of the work from this public filing due to the adult nature of its content, but can provide a version of Exhibit A containing the works' titles to the Court or any party upon request.

43. Thus, Defendant downloaded, copied, and distributed Plaintiff's Works without authorization.

44. Defendant's infringement was continuous and ongoing.

45. Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office.

46. Plaintiff seeks statutory damages, attorneys' fees, and costs under 17 U.S.C. § 501 of the United States Copyright Act.

### *Discovery Will Show that Defendant is the Individual Who Infringed Plaintiff's Copyrighted Works*

47. Plaintiff's investigation has determined that Defendant is the person who used IP address 24.4.188.12 to infringe on its copyrighted works.

48. Plaintiff utilized the Maxmind geolocation service to determine the ISP that assigned IP address 24.4.188.12 (to determine the correct ISP to whom a subpoena can be sent) and the geographic location of the subscriber of that IP address (to determine the proper venue in which to file an action).

49. Maxmind reported that IP address 24.4.188.12 was assigned by Comcast Cable Communications, LLC ("ISP") to a subscriber approximately located in San Leandro, California.

50. After the Court granted Plaintiff's request to conduct limited expedited discovery, Plaintiff served the court-authorized subpoena on the ISP on or about July 1, 2024.

51. Upon information and belief, the ISP subsequently provided notice of the subpoena (and this lawsuit) to the subscriber, in compliance with the Cable Communications Policy Act of 1984 ("CCPA"), 47 U.S.C. § 551 et seq.

52. The ISP responded to the subpoena and identified Defendant's spouse as the subscriber assigned the relevant IP address during at least one date of infringement and provided Defendant's address identified in paragraph 12.

53. The address identified in paragraph 12 is a single-family home.

54. After receiving the ISP's response to the subpoena, Plaintiff reviewed publicly available information for Defendant and individuals who, upon information and belief, resided in the residence (and therefore had sufficient access to the IP address during the period of infringement).

55. Defendant lived at the residence identified in paragraph 12 above during the period of infringement.

56. Upon information and belief, the only other occupants of the residence identified in paragraph 12 above during the period of infringement were Defendant's spouse, and two sons.

57. Plaintiff also logged BitTorrent network activity emanating from IP address 24.4.188.12 involving works other than Plaintiff's 27 copyrighted works during the period of infringement. Collectively, this evidence is referred to as the "Additional Evidence."

58. Plaintiff's Additional Evidence indicates that IP address 24.4.188.12 was used to download and distribute at least 4,822 files relating to other adult movies and mainstream media (i.e., movies, music, books, software, TV shows, and other works) using the BitTorrent protocol during the period of infringement.

59. This consistent and prolonged history of BitTorrent activity indicates that the infringer is unlikely to be a houseguest or infrequent visitor.

60. Publicly available records indicate strong matches between the BitTorrent activity identified in Plaintiff's Additional Evidence and Defendant.

61. **[REDACTED]**.

62. **[REDACTED]**.

## COUNT I

## Direct Copyright Infringement

63. The allegations contained in paragraphs 1-62 are hereby re-alleged as if fully set forth herein.

64. Plaintiff is the owner of the Works, which are each an original work of authorship.

65. Defendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol.

66. At no point in time did Plaintiff authorize, permit or consent to Defendant's copying, distribution, performance and/or display of its Works, expressly or otherwise.

67. As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A) Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Distribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works' audible and transmitting said performance of the work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publicly" perform); and

(D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works non-sequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the

display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

68. Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B) Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's Works from each of the computers under Defendant's possession, custody or control;

(C) Order that Defendant delete and permanently remove the infringing copies of the Works Defendant has on computers under Defendant's possession, custody or control;

(D) Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. § 504(a) and (c);

(E) Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) Grant Plaintiff any other and further relief this Court deems just and proper.

DATED this 4th day of November, 2024.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorneys for Plaintiff
Strike 3 Holdings, LLC

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 4th day of November, 2024.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorneys for Plaintiff
Strike 3 Holdings, LLC